UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                   )
JAMES MULLOWNEY, JR.,              )
                                   )
          Plaintiff,               )
                                   )
     v.                            )   C.A. No. 22-404 WES
                                   )
USAA CASUALTY INSURANCE            )
COMPANY,                           )
                                   )
          Defendant.               )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

This case involves a claim for insurance coverage under a homeowner's insurance policy issued by Defendant USAA Casualty Insurance Company to Plaintiff James Mullowney. Plaintiff alleges that a water loss occurred at his insured property in Newport, Rhode Island, on July 5, 2021, that resulted in extensive damage. See Am. Compl. ¶ 9, ECF No. 9. Pursuant to the insurance contract, the parties had an appraisal on the claims on which they could not reach an agreement, and the appraisal panel issued an award in June 2022. Before the Court is Defendant's Motion to Confirm Arbitration Award ("Def.'s Mot."), ECF No. 12. For the reasons that follow, Defendant's motion is DENIED.

I.   Background

Plaintiff is the owner of a property located at 38 Pelham Street in Newport, Rhode Island. Am. Compl. ¶ 5. Defendant issued a homeowner's insurance policy, effective August 9, 2020, to August 9, 2021, to Plaintiff, covering the property. Id. ¶ 6. The water loss occurred at Plaintiff's property on July 5, 2021. Id. ¶ 9.

Following the water loss, the parties reached agreement on some aspects of Plaintiff's claim, including fair rental value, temporary repairs, emergency services, personal property (contents), miscellaneous expenses, and building repairs (less depreciation), which have been paid to Plaintiff. Def.'s Mot. ¶¶ 4-5. The parties were unable, however, to reach an agreement as to the complete damages to the dwelling, contents, ordinance- and law-required code upgrades, and outstanding additional living expenses or fair rental value. Id. ¶ 5.

On January 7, 2022, Plaintiff demanded an appraisal of the outstanding claims in accordance with the policy, id. ¶ 6, which contains a clause, titled "Appraisal," providing a mechanism for the resolution of disputes over the value of claims.[1]  Ins.

---

[1] The clause states, in relevant part:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within

2

Contract, DX1 at 37-38, ECF No. 8-1; Def.'s Mot. ¶ 3. Following the completion of the procedure outlined in the clause, see supra at note 1, the appraisers and umpire issued an award in June 2022, after which Defendant issued the remaining payments less the holdback to Plaintiff.² Def.'s Mot. ¶¶ 10-12.

---

15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "resident premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
. . . .
This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "actual cash value," replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provision, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

Ins. Contract, DX1 at 37-38, ECF No. 8-1.

² Defendant alleges that, to date, Plaintiff has not submitted all the necessary invoices and documentation required for the holdback to be released under the insurance policy. Def.'s Mot. ¶ 13.

Plaintiff filed this lawsuit in November 2022.[3] In March 2023, Defendant filed this motion to confirm the award. See ECF No. 12. On May 5, 2023, the Court held a hearing on the motion. At the hearing, the Court ordered the parties to provide additional briefing on the issue of whether the appraisal clause in the policy constitutes an arbitration provision under Rhode Island law and whether that question should be certified to the Rhode Island Supreme Court. Both parties submitted supplemental briefs arguing that certification is unnecessary.[4] See Def.'s Supp. Mem. 1, ECF No. 20; Pl.'s Supp. Mem. 1, ECF No. 21.

---

[3] In his Complaint, Plaintiff asserted claims of breach of contract, breach of the duty of good faith and fair dealing, negligence, common law bad faith, statutory bad faith, and violation of the Unfair Trade Practice and Consumer Protection Act against Defendant. See Compl., ECF No. 1. Plaintiff subsequently filed an amended complaint omitting his claim under the Unfair Trade Practices and Consumer Protection Act, see Am. Compl., ECF No. 9, and the Court granted Defendant's motion to dismiss as to Plaintiff's negligence claim, see Mem. & Order, ECF No. 18.

[4] The question of whether the Court may certify a question of Rhode Island state law to the Rhode Island Supreme Court is controlled by Rule 6 of the Rhode Island Supreme Court Rules of Appellate Procedure, which provides that the federal district court may certify "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." R.I. Sup. Ct. R. App. Proc. 6. However, the mere fact that the Rhode Island Supreme Court has not had occasion to address an issue does not, by itself, require certification. A "federal court may attempt to predict how [a] state's highest court would rule on [an] issue in a pending federal case," based upon existing state law or "better reasoned authorities" from other jurisdictions. Lieberman-Sack v. HCHP-NE, 882 F. Supp. 249, 254 (D.R.I. 1995). In light of the parties' consensus that certification is

4

II.  Discussion

Arbitration awards are governed by Title 10, Chapter 3 of the Rhode Island General Laws ("Arbitration Act" or "Act").  Under the Act, "[a]t any time within one year after the award is made, any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court must grant the order confirming the award unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12 – 10-3-14."  R.I. Gen. Laws § 10-3-11.  Under § 10-3-12, an award may be vacated only under certain circumstances:

(1) Where the award was procured by corruption, fraud or undue means.
(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause show, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In addition, § 10-3-14(a) provides for modification or correction of the award in other circumstances:

(1) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

---

unnecessary here, the Court opts not to certify the question to the Rhode Island Supreme Court.

5

> (2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter affecting the merits of the decision upon the matters submitted.
>
> (3) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The Court is only permitted to vacate, modify, or correct an award under the Arbitration Act "upon the application of any party to the arbitration," and that application must be "served upon the adverse party or [their] attorney within sixty (60) days after the award is filed or delivered, and before the award is confirmed." R.I. Gen. Laws § 10-3-15.

Defendant filed its motion to confirm the award on March 29, 2023, within the one-year limitation period imposed by § 10-3-11. Plaintiff never sought to modify, vacate, or correct the award at any time, and the sixty-day deadline for such action, see § 10-3-11, which lapsed on approximately August 20, 2022, has long since passed. And, although the Court is empowered by the Act to "make an order, to be served with the notice of the motion, staying the proceedings of the adverse party to enforce the award," Plaintiff has requested no such action here. See § 10-3-11. Plaintiff contends, however, that the motion to confirm should be denied because the award which Defendant seeks to have confirmed is an appraisal award, not an arbitration award, and, therefore, the

Arbitration Act and the deadlines it imposes are inapplicable.[5] The Court agrees.

a. Insurance Policy Language

"[I]n the absence of a statutorily declared policy to the contra, the parties to an insurance agreement are free to contract as they desire." Constant v. Amica Mut. Ins. Co., 497 A.2d 343, 345 (R.I. 1985) (citing Faraj v. Allstate Ins. Co., 486 A.2d 582, 585 (R.I. 1984)), superseded by statute on other grounds, R.I. Gen. Laws § 27-7-2.1(i). There is no provision in the Arbitration Act that precludes parties to an insurance contract from agreeing that an appraisal provision is not controlled by the Act.

"It is well established that [Rhode Island courts] appl[y] the rules for construction of contracts when interpreting an insurance policy and that [courts] shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." Mallane v. Holyoke Mut. Ins. Co., 658 A.2d 18, 20 (R.I. 1995). To determine whether a policy is ambiguous, the Court "read[s] [the] policy in its entirety, giving words their plain, ordinary, and usual meaning." Peloquin v. Haven Health Ctr. of Greenville, LLC, 61 A.3d 419, 431 (R.I. 2013) (quoting Sjogran v.

---

[5] Plaintiff also argues that the appraisal panel's award was fatally flawed. Pl.'s Obj. Def.'s Mot. Confirm Arb. Award 1-5, ECF No. 16. Because the Court denies Defendant's motion to confirm the award, it need not reach the merits of the award itself at this juncture.

Metro. Prop. & Cas. Ins. Co., 703 A.2d 608, 610 (R.I. 1997)). If the terms of the policy are ambiguous, "the policy will be strictly construed in favor of the insured and against the insurer." Id. at 432.

Here, the appraisal provision of the insurance contract states, unambiguously: "This is not a provision providing for or requiring arbitration." Ins. Contract, DX1 at 37-38. Giving the words in this provision "their plain, ordinary, and usual meaning," it is clear that the policy does not provide for arbitration. See Peloquin, 61 A.3d at 431. And, in any event, were the Court to find any ambiguity in this provision, it would be constrained to resolve that ambiguity in favor of Plaintiff. See Peloquin, 61 A.3d at 431. Thus, the plain language of the insurance policy lends itself to the conclusion that the appraisal procedure is not an arbitration and thus is not governed by the Arbitration Act.

b. Rhode Island Approach

However, the Rhode Island Supreme Court "has recognized that an 'appraisal' procedure can be equated with 'arbitration,'" noting that "[w]hat labels are used in describing the procedure called for in a policy are not controlling. Rather . . . it is the substance of the transaction that determines its character." Waradzin v. Aetna Cas. & Sur. Co., 570 A.2d 649, 650 (R.I. 1990) (citing Grady v. Home Fire & Marine Ins. Co., 63 A. 173 (1906)). Under Rhode Island law, an "appraisal" is defined as "an analysis,

opinion, or conclusion relating to the nature, quality, value or utility of specified interests in, or aspects of, identified real estate." R.I. Gen. Laws § 5-20.7-2(1); see also Couch on Ins. § 209:8 Appraisal distinguished (3d ed. 2022) ("Although the terms arbitration and appraisal are sometimes used interchangeably, appraisal is distinguished by its more limited role.  In an appraisal, the parties refer some ministerial duty or some matter involving only the ascertainment of facts to selected persons for disposition.  An appraisal requires neither a hearing nor the exercise of judicial discretion."); id. at n.3 ("[A]n appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy."); Am. Jur. Ins. § 1652 ("Appraisal establishes only the amount of a loss and not liability for the loss under an insurance contract.").

In contrast, "[t]he purpose of arbitration is dispute resolution, not merely fact-finding." Aponik v. Lauricella, 844 A.2d 698, 706 (R.I. 2004).  While an appraisal "only relates to the ascertainment of facts," an arbitration "resolves a dispute on the merits[.]" New Life Worship Center, Inc. v. Church Mut. Ins. Co., C.A. No. PC-2019-7574, at *8 (R.I. Super. Ct. Jan. 6, 2020). "Arbitration is generally a quasi-judicial proceeding that ordinarily will decide the entire controversy." Am. Jur. Ins. § 1652.  However, "arbitrations sometimes do cover only a part of the overall dispute between the parties," rather than resolving

9

the entire controversy. Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004); see also Couch on Ins. § 210:3, Need for Agreement (3d ed. 2022) ("Unless a statutory provision mandates the inclusion of particular subject matter, the arbitration agreement may encompass as few, or as many, issues which may arise under the policy as the parties may choose."). Hallmarks of classic arbitration that have been identified by the First Circuit are: a remedy that is "final," "an independent adjudicator, substantive standards . . ., and an opportunity for each side to present its case." Fit Tech, Inc., 374 F.3d at 7.

Here, Plaintiff demanded an appraisal of his outstanding claims pursuant to the appraisal clause in the policy on January 7, 2022. Def.'s Mot. ¶ 7. Plaintiff named Robert Smith of C&L Builders as his appraiser, and Defendant selected Dallas Dodge of A.E. Oberhause, Inc., to act as its appraiser. Id. at ¶ 6. The appraisers selected Paul Heywood as the umpire. Id. at ¶ 8. The parties agreed that the appraisal would include the following determinations: (1) replacement cost and actual cash value for the resulting water damages to the dwelling; (2) fair rental value for Plaintiff's unit and loss of rental value for other units; (3) building ordinance or law cost to be determined as a result of the loss but not payable until incurred and documentation submitted; and (4) replacement cost and actual cash value for the resulting water damages to the personal property owned by

10

Plaintiff. Id. at ¶ 9. The appraisers and umpire issued the award, $1,782,264.90 in replacement cost value and $1,209,572.57 in actual cash value, on June 21, 2022. Id. at 3.

As specified in the insurance contract, this procedure consisted solely of a determination of the amount of loss. See Ins. Contract, DX1 at 37-38 ("The appraisers will separately set the amount of the loss . . . The appraisers and umpire are only authorized to determine the 'actual cash value,' replacement cost, or cost to repair the property that is the subject of the claim."); Declaration of Appraisers, DXA, ECF No. 12-1 ("The above award reflects the agreed damages and costs associated with all damages claimed for the dwelling and other structures."). The provision specifically exempts from the scope of the procedure determinations of "coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist" between the parties. Ins. Contract, DX1 at 38. And, although the provision provides that "once contractual liability is admitted or determined, the appraisal award is binding," it does not give the appraisers authority to determine contractual liability. Id. Overall, the procedure here is best characterized as an appraisal rather than an arbitration because the scope was limited to fact-finding to determine the amount of loss, the procedure did not resolve a dispute on the merits, and the provision specifies that the remedy only becomes final once

contractual liability is determined. Therefore, the appraisal procedure is not subject to the limitations imposed by the Arbitration Act.

Defendant points to the Rhode Island Supreme Court case Waradzin, 570 A.2d at 650, to support its contention that the appraisal procedure here should be treated as an arbitration. Def.'s Supp. Mem. 6-7. However, Waradzin is inapt for two reasons. First, the Waradzin court did not closely examine the factors differentiating an arbitration from an appraisal and rather relied on the fact that the party opposing confirmation of the award referred to the procedure as an arbitration in numerous filings, effectively acceding to that characterization. Waradzin, 570 A.2d at 650-51. Defendant has made no such allegation here and Plaintiff has not adopted the characterization of the procedure as arbitration, either explicitly or implicitly. Second, Waradzin cabined its holding by stating that "the arbitration confirmation proceeding was appropriate in this case." Id. at 650 (emphasis added). By including this language, the Waradzin court made clear that its holding was not intended as a blanket statement that an appraisal must always be treated as an arbitration; rather, the case mandates that the question must be considered on a case-by-case basis. See id. But see B.R.S. Real Estate, Inc. v. Certain Underwriters at Lloyd's, C.A. No. 1:20-cv-228-JJM-PAS, 2023 WL 3620268, at *2 (D.R.I. May 24, 2023) ("[T]he appraisal process

12

constitutes arbitration under Rhode Island law.").

c. Standard Fire Appraisal Provision

Finally, Defendant points out that the language of this provision is derived from Rhode Island's statutory standard fire appraisal provision, see R.I. Gen. Laws § 27-5-3, which has historically been interpreted as an arbitration provision, suggesting that a similar interpretation should be applied here. Def.'s Supp. Mem. 4; Waradzin, 570 A.2d at 650 (interpreting standard fire appraisal provision and concluding that it can be equated with arbitration). The first paragraph of the appraisal provision here is substantially similar to the standard fire appraisal provision. Compare R.I. Gen. Laws § 27-5-3,[6] with Ins.

---

[6] The standard fire appraisal provision provides:

"In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of that demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen (15) days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two (2) when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and the umpire shall be paid by the parties equally."

13

Contract, DX1 at 37-38.  However, neither the standard fire appraisal provision nor the similar provisions in the cases cited by Defendant contain the final paragraph of the provision in this policy, which states: "[t]his is not a provision providing for or requiring arbitration," and limits the scope of the procedure to determining costs.  Ins. Contract, DX1 at 38.  Because of this additional language, the Court concludes that it is not constrained to apply the same interpretation of the provision here that other courts have applied when interpreting the standard fire appraisal provision.

III. Conclusion

For the foregoing reasons, Defendant's Motion to Confirm Arbitration Award, ECF No. 12, is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith

William E. Smith
District Judge
Date:  June 27, 2023

---

R.I. Gen. Laws § 27-5-3.