UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JAMES T. MULLOWNEY, JR., :
    *Plaintiff*, :
:
v. : C.A. No.: 1:22-cv-00404-WES-PAS
:
USAA CASUALTY INSURANCE COMPANY, :
    *Defendant*. :

## DEFENDANT'S MOTION TO BIFURCATE PLAINTIFF'S BAD FAITH CLAIMS AND TO STAY RELATED DISCOVERY

Pursuant to Fed. R. Civ. P. 42(b), Defendant, USAA Casualty Insurance Company ("USAA CIC"), hereby moves to bifurcate Plaintiff's claims of bad faith (breach of the duty of good faith and fair dealing, common law bad faith, statutory bad faith (Counts II, III and IV) from those of Breach of Contract (Count I), and to stay discovery upon the bad faith claims until such time as a breach of contract is established.

**I.    FACTS**

1.    This case involves a claim for insurance benefits under a homeowner's insurance policy issued by USAA CIC to Plaintiff. (ECF No. 9, Am. Compl., at ¶ 6). More specifically, Plaintiff is the owner of certain real property located at 38 Pelham Street, Newport, Rhode Island (the "Property"). *See id.*, at ¶ 5. He alleges that a water loss occurred at the Property on July 5, 2021 (the "Loss") and that as a result, significant and extensive damage occurred. (*See id*. ¶¶ 5, 9). To date, USAA CIC insured the Property and has paid or allowed over $1,057,505.89 for repairs and other covered benefits. *See id.*, at ¶ 7.

Nevertheless, Plaintiff's four-count Amended Complaint[1] alleges that USAA CIC, *inter alia*, "failed to conduct an adequate and comprehensive investigation into the Loss" and that it "failed to promptly make payments in violation and in breach of the terms of the Policy." *See id.*, at ¶¶ 10, 12, 13. Plaintiff further alleges that USAA CIC failed to provide Plaintiff with "actual cash value" for the Loss, and that it delayed making payments and caused Plaintiff to lose the ability to rent the Property for more than 12 months and to sustain an uninsured loss of rental income *See id.*, at ¶¶ 15–19). The Amended Complaint goes on to allege claims for breach of contract (Count I), breach of the duty of good faith and fair dealing (Count II), common law bad faith (Count III) and statutory bad faith pursuant to R.I.G.L. § 9-1-33 (Count IV).

On August 1, 2023, Plaintiff served a set of Interrogatories (the "Interrogatories") and a set of Requests for Production of Documents (the "RFPs") on USAA CIC. These discovery requests are attached hereto as Exhibit 1 and 2, respectively. Plaintiff seeks far ranging discovery that is unrelated to whether USAA CIC breached the Policy in adjusting the Plaintiff's claim. For example, Plaintiff seeks discovery relating to:

- All documents that comprise the entire contents of the claim file (includes all communications, including but not limited to e-mail correspondence, notes, and memoranda, electronic recordkeeping, claim committee and/or roundtable reports and the like) related in any way to the Plaintiff's claim and/or the Incident;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating coverage;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating the value of the loss relating to the dwelling;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating the value of the loss relating to the contents;

---

[1] After filing his Amended Complaint in the wake of USAA CIC's Motion to Dismiss, this Honorable Court granted Defendant's Motion to Dismiss Count V (Negligence), leaving a four-count operative pleading.

- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to evaluating the amount of benefits/legal damages owed on a claim made pursuant to a homeowner's policy.
- Any and all documentation and/or information to support the following:
  - How Plaintiff's claim was approached by Defendant;
  - Whether fair consideration was actually extended to Plaintiff's claim;
  - Whether Plaintiff's claim was promptly considered;
  - Whether Defendant employed competent adjusters to consider this particular type of loss; and
  - Whether Defendant has exercised good faith concerning Plaintiff's uninsured claim;
- Copies of all complaints filed against Defendant, or any related companies, its parent companies or subsidiaries in the last ten years that allege breach of contract and/or bad faith with regard to claims and losses involving water losses for the last ten (10) years;
- Complete copies of all claims manuals or training manuals by whatever name known, or other materials that address the handling of claims made pursuant to homeowner's policies;
- A complete copy of all claims bulletins, directives, guidelines or memorandum issued including QA guidelines that relate in any way to the adjusting or handling of claims made pursuant to a homeowner's policy;
- Copies of any documents addressing goals, training or meetings for claims adjusters; and
- Any and all documentation reciting company philosophies and policies regarding claims handling policies, providing service to policy holders, good/bad faith claim handling practices, extra contractual damages and suits, compliance with unfair claims practices statutes, wrongful claims handling and employee handbooks or orientation materials.

Plaintiffs' proposed discovery goes far beyond the contractual dispute before the Court and improperly seeks "bad faith" discovery unrelated to whether USAA CIC breached the insurance contract. Accordingly, USAA CIC respectfully moves to sever the bad faith claims (Counts II, III and IV) from the breach of contract claim (Count I) and to stay discovery upon the bad faith claims until and unless a breach of contract is established.

## II.     ARGUMENT

This dispute is about whether USAA CIC breached the insurance contract in adjusting the claim. If it is determined that USAA CIC did not breach the Policy, Plaintiff's bad faith claims

3

will be moot under Rhode Island law. Thus, the Court should bifurcate Plaintiff's bad faith claims and stay related discovery.

### A. APPLICABLE STANDARDS AND CASE LAW

Fed. R. Civ. P. 42(b) provides, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims . . . ." Under that standard, this Court has bifurcated and stayed similar bad faith claims when a breach of contract is yet to be determined. *See Glocester Country Club v. Scottsdale Indem. Co.*, No. CV 20-184 WES, 2020 WL 6945937, at *2 (D.R.I. Nov. 25, 2020) (Smith, J.); *see also TranSched Sys. Ltd. v. Fed. Ins. Co.*, 958 F. Supp. 2d 331, 338 (D.R.I. 2013) (McConnell, J.) (where the insured suggested that the Court "essentially stay its bad faith claims and not render a decision unless and until [the insured] prevails on its declaratory judgment claims for coverage," the Court held this was "the best course" because the insured's "bad faith claims will disappear if it does not succeed on the merits of its declaratory judgment case'").

As this Court recently stated, "[b]ecause 'a bad faith action does not exist until the plaintiff first establishes a breach of contract[,]' bad faith claims often lend themselves well to separation and stay of discovery." *Glocester Country Club*, 2020 WL 6945937, at *1 (quoting *Wolf v. Geico Ins. Co.*, 682 F. Supp. 2d 197, 198 (D.R.I. 2010)). In *Wolf*, the Court also noted that the:

> Court's broad task is to weigh the risk of prejudice to the defendant that joint discovery carries against the possible efficiency to be gained . . . [and] the Court must bear in mind that combining discovery is not always economical or appropriate.

*Wolf*, 682 F. Supp. 2d at 201–02 (remanding to the magistrate judge for further consideration).

Indeed, "[i]t is considered normal course to bifurcate a bad faith claim and stay discovery on that claim until there is first a finding of coverage." *Transched Sys.*, 958 F. Supp. 2d at 338 (citing *Imperial Cas. and Indemnity Co. v. Bellini*, 746 A.2d 130, 134 (R.I. 2000); *Corrente v.*

*Fitchburg Mut. Fire Ins. Co.*, 557 A.2d 859, 861–62 (R.I. 1989); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 999–1002 (R.I. 1988)). Under similar circumstances, this Court recently granted another insurer's motion to bifurcate bad faith claims and stay related discovery. *See Glocester Country*, 2020 WL 6945937, at *2 ("[t]he Court agrees with Defendant: the contract claims turn on the insurance agreement between the parties and the facts of the [alleged loss], not Defendant's investigation").

Indeed, the Rhode Island Supreme Court has held that it is inherently prejudicial for a trial justice to decline to sever a bad faith claim from a breach of contract claim. *See Corrente*, 557 A.2d at 862; *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002) ("claims of insurer bad faith are severed and tried separately from the breach of insurance contract claim"); *Clutch City Sports & Entertainment, L.P. v. Affiliated FM Ins. Co.*, No. PC-2020-05137, 2021 WL 1097930, at *3 (R.I. Super. Ct. Mar. 17, 2021) "[t]he concerns over prejudice to [the insurer] are too great for this Court to depart from the unfailing practice of severing and staying discovery on the bad-faith claims." *Id.* at *4.

### B. PLAINTIFF'S BAD FAITH CLAIMS SHOULD BE BIFURCATED WITH RELEVANT DISCOVERY STAYED.

There is nothing different here that should require a different result. Plaintiff has not yet established a breach of the insurance contract, and, therefore, Count II, alleging breach of the covenant of good faith and fair dealing, and Counts III and IV alleging common law and statutory bad faith, should be bifurcated from Count I (breach of contract) and discovery related to those claims stayed until the Court rules on Plaintiff's breach of contract claim. *See Glocester Country Club*, 2020 WL 6945937, at *1.

In doing so, the Court will preserve judicial economy by first evaluating the discrete coverage issues presented by the Complaint. *See id.* If the breach of contract claim is resolved in

5

favor of USAA CIC, Plaintiff's bad faith claims will be moot because, under Rhode Island law, "[t]here cannot be a showing of bad faith when the insurer is able to demonstrate a reasonable basis for denying benefits."[2] *Bartlett*, 538 A.2d at 1000; *Comfortably Numb Marine, LLC v. Markel Am. Ins. Co.*, 2015 WL 6396076, at *4 (D.R.I. Oct. 21, 2015) ("the insured has the burden to 'show the absence of a reasonable basis for denying benefits of the policy *and* the [insurer's] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim'" (emphasis in original) (citing *Skaling*, 799 A.2d at 1004). Given that Plaintiff's breach of contract claim is predicated on the facts of his specific claim and the applicable Policy language, "the contract claims turn on the insurance agreement between the parties and the facts of the [alleged loss], not Defendant's investigation." *Glocester Country Club*, 2020 WL 6945937, at *2 (granting similar motion). Moreover, discovery on Plaintiff's bad faith claims will be entirely removed from Plaintiff's contract claims, which this Court has recognized as weighing in favor of granting the Motion. *See Wolf*, 682 F. Supp. 2d at 200 ("where non-overlapping bad faith discovery is likely to consume significant resources, staying discovery will 'serve judicial economy'") (internal citation omitted)); *Glocester Country Club*, 2020 WL 6945937, at *2 (where "the contract claims turn on the insurance agreement between the parties and the facts of the [alleged loss], not Defendant's investigation," the court should grant a motion to bifurcate bad faith claims and stay related discovery).

---

[2] Indeed, given this distinct majority view, Plaintiffs' bad faith claims will likely never be ripe for adjudication given that Rhode Island requires a putative bad faith plaintiff to "demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim." *Skaling*, 799 A.2d at 1012; *Thomas Shannahan v. Rhode Island Interlocal Risk Man. Trust*, --- A.3d ----, 2022 WL 599026, at *3 (R.I. Mar. 1, 2022) (affirming the superior court's award of summary judgment to insurer on insured's bad faith claim because "the defendant's position meets the 'fairly debatable' standard"). Surely, what has been described as an "overwhelming majority" of cases provides a "reasonable basis in law" to support USAA CIC's position. *See id.*

Accordingly, it is unfairly prejudicial to subject USAA CIC to expansive (and very expensive) bad faith" discovery at this stage of the case. For example, Plaintiff seeks inter alia, "[c]opies all complaints filed against Defendant, or any related companies, its parent companies or subsidiaries in the last ten years that allege breach of contract and/or bad faith with regard to claims and losses involving water losses for the last ten (10) years," "copies of all claims manuals or training manuals . . . that address the handling of claims made pursuant to homeowner's policies," copies of "all claims bulletins, directives, guidelines or memorandum issued including QA guidelines that relate in any way to the adjusting or handling of claims made pursuant to a homeowner's policy," or "any documents addressing goals, training or meetings for claims adjusters." None of this discovery has any bearing on whether USAA CIC breached the insurance Policy in adjusting Plaintiff's claim. Thus, Plaintiff's discovery requests are intrusive and prejudicial to USAA CIC. *See Clutch City Sports*, 2021 WL 1097930, at *3–4 ("[t]he concerns over prejudice to [the insurer] are too great for this Court to depart from the unfailing practice of severing and staying discovery on the bad-faith claims." *Id.* at *4 (also noting that "[w]hile this information may be discoverable for a bad-faith claim, it is likely prejudicial and privileged and, therefore, likely *not discoverable in relation to a breach of contract claim*" and finding "that prejudice to [the insurer]'s ability to claim its right to privilege and to defend itself in relation to the breach of contract claims is imminent," *id.* at *3).

Here, Plaintiff's requests are even *more* intrusive than those at issue in *Clutch City Sports*— seeking the "the entire contents of the claim file," "documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating coverage," as well as those that relate to "investigating the value of the loss relating to the dwelling," "contents" and

7

"evaluating the amount of benefits/legal damages owed on a claim made pursuant to a homeowner's policy." *See eg.*, Ex. 2, Requests for Production 10, 13-15, 18. Additionally, and demonstrative of the broadness of Plaintiff's requests, Plaintiff seeks all documentation and/or information to support:

- o How Plaintiff's claim was approached by Defendant;
- o Whether fair consideration was actually extended to Plaintiff's claim;
- o Whether Plaintiff's claim was promptly considered;
- o Whether Defendant employed competent adjusters to consider this particular type of loss; and
- o Whether Defendant has exercised good faith concerning Plaintiff's uninsured claim;

*See id.*, Request for Production 21. Further, he seeks "[c]opies of all complaints filed against Defendant, or any related companies, its parent companies or subsidiaries in the last ten years that allege breach of contract and/or bad faith with regard to claims and losses involving water losses for the last ten (10) years," and "copies of all claims manuals or training manuals by whatever name known, or other materials that address the handling of claims made pursuant to homeowner's policies," a "complete copy of all claims bulletins, directives, guidelines or memorandum issued including QA guidelines that relate in any way to the adjusting or handling of claims made pursuant to a homeowner's policy," "[c]opies of any documents addressing goals, training or meetings for claims adjusters; and "[a]ny and all documentation reciting company philosophies and policies regarding claims handling policies, providing service to policy holders, good/bad faith claim handling practices, extra contractual damages and suits, compliance with unfair claims practices statutes, wrongful claims handling and employee handbooks or orientation materials." *See id.*, Request for Production 22, 23, 25-27.

This staggering breadth of discovery, improper even *within* the context of a bad faith claim, is even more intolerable prior to resolution of Plaintiff's breach of contract claim. *E.g.*, *Glocester Country Club*, 2020 WL 6945937, at *2 (granting similar motion where the insured sought "all

'documents, manuals (claims, training, operations and the like), guidelines, policies and procedures . . . used for claims handling that relate to investigating coverage . . . .'") .

## III. CONCLUSION

For the foregoing reasons, Defendant USAA Casualty I Insurance Company, respectfully requests that this Court bifurcate the Plaintiff's bad faith claims—Counts II, III and IV, and stay related discovery on those Counts until the claim for breach of contract, Count I, is resolved.

Dated: August 15, 2023

**DEFENDANT,**

**USAA CASUALTY INSURANCE COMPANY,**

By: */s/ Dana M. Horton*
Dana M. Horton, #6251
**ROBINSON & COLE LLP**
One Financial Plaza, 14th Floor
Providence, RI 02903
Tel. No.: (401) 709-3300
Fax No.: (401) 709-3399
dhorton@rc.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2023, I have caused the within *Motion to Sever Bad Faith Claims* to be filed with the Court via the CM/ECF filing system. As such, this document will be electronically sent to the following registered participants identified on the Notice of Electronic Filing (NEF):

John A. Donovan III, Esq.
Judah H. Rome, Esq.
**Sloane and Walsh LLP**
652 George Washington Highway, Suite 302
Lincoln, RI 02865
jdonovan@sloanewalsh.com
jrome@sloanewalsh.com

*/s/ Dana M. Horton*
Dana M. Horton