```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                    )
JAMES T. MULLOWNEY,                 )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   C.A. No. 22-404 WES
                                    )
USAA CASUALTY INSURANCE COMPANY,    )
                                    )
        Defendants.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Currently before the Court is Defendant USAA Casualty Insurance Company's Motion to Bifurcate Plaintiff's Bad Faith Claims and to Stay Related Discovery, ECF No. 24. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

I.  Background

Plaintiff's historic property located at 38 Pelham Street, Newport, Rhode Island, incurred water loss on July 5, 2021, which caused "significant and extensive damage." Am. Compl. ¶¶ 5, 9, 11, ECF No. 9. At the time, a homeowners insurance policy from Defendant covered Plaintiff's property. See id. ¶¶ 6-7. On the same day as the water loss, Plaintiff filed a claim with Defendant. See id. ¶ 10. As a result, Defendant paid out money for repairs and other covered benefits. Id. ¶ 14-21; Def.'s Mot. to Bifurcate Pl.'s Bad Faith Claims and to Stay Related Discovery ("Def.'s

1

Mot.") 1, ECF No. 24.  Plaintiff alleges that Defendant "failed to conduct an adequate and comprehensive investigation," failed to make prompt payment, and failed to provide Plaintiff with "actual cash value" for the property's damage.  Am. Compl. ¶¶ 12-13, 15.  These alleged failures prevented Plaintiff from renting out his property for more than twelve months, causing uninsured losses.  Id. ¶¶ 16-17, 19.  Based on these events, Plaintiff initiated suit alleging breach of contract (Count I), breach of the duty of good faith and fair dealing ("fair dealing claim") (Count II), common law bad faith (Count III), and statutory bad faith under R.I. Gen. Laws § 9-1-33 (Count IV).  Id. ¶¶ 32-70.

Now, after Plaintiff served written discovery, Defendant brings this Motion to bifurcate Plaintiff's bad faith claims (Counts II-IV) from his breach of contract claim (Count I), and to stay discovery on the bad faith claims until the breach of contract claim has been resolved.  Def.'s Mot. 1.

II. Discussion

Defendant seeks relief under Federal Rule of Civil Procedure 42(b) which provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims . . . ."  The movant bears the burden of demonstrating that such relief is appropriate.  See Bank of R.I. v. Progressive Cas. Ins. Co., 293 F.R.D. 105, 106 (D.R.I. 2013).

Determining whether bifurcation and stay of discovery is appropriate requires a case-by-case analysis in which the Court "weigh[s] the risk of prejudice to the defendant . . . against the possible efficiency to be gained" by allowing the claims to proceed in tandem. Wolf v. Geico Ins. Co., 682 F. Supp. 2d 197, 201 (D.R.I. 2010); Bank of R.I., 293 F.R.D. at 106. Prejudice may include "discovery on bad faith [that] exposes insurers' work-product protected or privileged materials to disclosure . . . before it is clear whether the plaintiff an even proceed with a bad faith claim by establishing a breach of contract." Wolf, 682 F. Supp. 2d at 199. At the same time, "simultaneous discovery 'avoids discovery disputes over which documents pertain to the contract claim and which relate to the bad faith claim[,] eliminates duplicative discovery should [Plaintiff] establish a contract claim[,]' and allows for expeditious trials assuming Plaintiff's" breach of contract claim is successful. Glocester Country Club v. Scottsdale Indem. Co., No. 20-184 WES, 2020 WL 6945937, at *1 (D.R.I. Nov. 25, 2020) (quoting Wolf, 682 F. Supp. 2d at 199).

"Because 'a bad faith action does not exist until the plaintiff first establishes a breach of contract[,]' bad faith claims often lend themselves well to separation and stay of discovery." Glocester Country Club, 2020 WL 6945937, at *1 (quoting Wolf, 682 F. Supp. 2d at 198). This is because, under

3

Rhode Island law, "[t]here cannot be a showing of bad faith when the insurer is able to demonstrate a reasonable basis for denying benefits." Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1000 (R.I. 1988), abrogated on other grounds by Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002).

Here, Plaintiff does not dispute that bifurcation is appropriate. See generally Pl.'s Obj. to Def.'s Mot. to Bifurcate Pl.'s Bad Faith Claims and to Stay Related Discovery ("Pl.'s Opp."), ECF No. 25. Given this and the fact that courts routinely bifurcate bad faith claims and breach of contracts claims as a matter of course, see, e.g., TranSched Sys. Ltd. v. Fed. Ins. Co., 958 F. Supp. 2d 331, 338 n.7 (D.R.I. 2013) ("It is considered normal course to bifurcate a bad faith claim and stay discovery on that claim until there is first a finding of coverage."); Skaling, 799 A.2d at 1010, the Court concludes that bifurcation is appropriate in this case.

The parties' primary dispute is whether discovery on Plaintiff's bad faith claims should be stayed. This issue comes down to "how much the subject matter of discovery on the bad faith and contract claims will overlap." Wolf, 682 F. Supp. 2d at 200. According to Defendant, Plaintiff's discovery for his bad faith claims "will be entirely removed from" the discovery for his breach of contract claim. Def.'s Mot. 6. Defendant provides an illustrative list of discovery requests that do not relate to

4

Plaintiff's breach of contract claim and are otherwise prejudicial:

- All documents that comprise the entire contents of the claim file (includes all communications, including but not limited to e-mail correspondence, notes, and memoranda, electronic recordkeeping, claim committee and/or roundtable reports and the like) related in any way to the Plaintiff's claim and/or the Incident;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating coverage;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating the value of the loss relating to the dwelling;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to investigating the value of the loss relating to the contents;
- All Defendant documents, manuals (claims, training, operations and the like), guidelines, policies and procedures (whether stored in hard copy or in electronic form) used for claims handling that relate to evaluating the amount of benefits/legal damages owed on a claim made pursuant to a homeowner's policy;
- Any and all documentation and/or information to support the following:
    - How Plaintiff's claim was approached by Defendant;
    - Whether fair consideration was actually extended to Plaintiff's claim;
    - Whether Plaintiff's claim was promptly considered;
    - Whether Defendant employed competent adjusters to consider this particular type of loss; and

5

- - o Whether Defendant has exercised good faith concerning Plaintiff's uninsured claim;
- Copies all complaints filed against Defendant, or any related companies, its parent companies or subsidiaries in the last ten years that allege breach of contract and/or bad faith with regard to claims and losses involving water losses for the last ten (10) years;
- Complete copies of all claims manuals or training manuals . . . that address the handling of claims made pursuant to homeowner's policies;
- A complete copy of all claims bulletins, directives, guidelines or memorandum issued including QA guidelines that relate in any way to the adjusting or handling of claims made pursuant to a homeowner's policy;
- Copies of any documents addressing goals, training or meetings for claims adjusters;
- Any and all documentation reciting company philosophies and policies regarding claims handling policies, providing service to policy holders, good/bad faith claim handling practices, extra contractual damages and suits, compliance with unfair claims practices statutes, wrongful claims handling and employee handbooks or orientation materials.

Def.'s Mot. 2-3 (quoting DX2, Pl.'s First Request for Prod. of Documents Propounded on Def. 5-6, ECF No. 24-2).

Plaintiff asserts there is "significant overlap" between his breach of contract claim and bad faith claims but does not provide examples or an explanation of how that is the case. See Pl.'s Opp. 5-7. Instead, Plaintiff argues that Defendant's motion "is premised on the false proposition that [Plaintiff's fair dealing claim] is a bad faith claim" when actually, Plaintiff says, it is another type of breach of contract claim. Id. at 5. Thus, because

6

the two claims are the same, Plaintiff should be "allowed to conduct discovery related to that claim at this stage of the litigation." Id. at 6.

First, and most obviously, this position fails to account for the fact that Counts III and IV are "true" bad faith claims. Second, the cases Plaintiff relies on fail to support his point. He relies on Houle v. Liberty Insurance Corp., 271 A.3d 591 (R.I. 2022), and McNulty v. Chip, 116 A.3d 173 (R.I. 2015), for the proposition that a fair dealing claim is a claim for a breach of contract. Pl.'s Opp. 5. It is important to note that neither Houle nor McNulty involved a motion to bifurcate or discovery in general. In Houle, the Rhode Island Supreme Court noted that "a [fair dealing claim] is not an independent cause of action that must be pled separate and apart from a claim for breach of contract." Houle, 271 A.3d at 595 (citing McNulty, 116 A.3d at 185). Rather than support Plaintiff's argument that he is entitled to discovery on his fair dealing claim, Houle and McNulty suggest that Plaintiff's breach of the duty of good faith and fair dealing count and breach of contract count are duplicative.[1]

Plaintiff further argues the "factors"[2] laid out in Wolf counsel in favor of bad faith discovery proceeding because (1) he

---

[1] The Court need not decide that question given Defendant has not presented it to the Court.

[2] The Court disagrees with Plaintiff's characterization of the above referenced considerations as "factors." See Pl.'s Obj. to

7

is not seeking a significant amount of privileged materials, (2) the bad faith claims are not a significant portion of his claims against Defendant, (3) he is not seeking special damages related to emotional distress,[3] and (4) expert testimony will only play a limited role in proving his claims against Defendant. Pl.'s Opp. 7-8.

Plaintiff has no basis to suggest it is not seeking a significant amount of privileged material. In support of his position, Plaintiff points out that "USAA . . . does not raise a single argument" that Plaintiff is seeking privileged documents. Pl.'s Opp. 7. That is beside the point. Plaintiff originally served his requests for production on August 1, 2023. It is unlikely Defendant has completed its privilege review, preventing Defendant from indicating whether there is a significant amount of privileged material at issue. And the requests Defendant identified, see supra pp. 5-6, will likely elicit privileged materials. See Def.'s Reply 6, ECF No. 26.

---

Def.'s Mot. to Bifurcate Pl.'s Bad Faith Claims and to Stay Related Discovery ("Pl.'s Opp.") 7, ECF No. 25. Instead, they are better seen as only considerations that can aid a court in determining the extent to which there is non-overlapping bad faith discovery in this kind of case. See Wolf v. Geico Ins. Co., 682 F. Supp. 2d 197, 201 (D.R.I. 2010).

[3]The Court takes note that Plaintiff is not seeking special damages. Pl.'s Opp. 8.

Plaintiff also misstates the second consideration discussed in Wolf. There, the Court identified the "alleged continuing bad faith activity during litigation over the contract" as a reason to stay discovery and conserve judicial resources. Wolf, 682 F. Supp. 2d at 201. Here, Plaintiff admits that Defendant's alleged bad faith is "ongoing" because, as Plaintiff contends, Defendant continues to not pay what is owed to Plaintiff. Pl.' Opp. 8. Because Defendant's alleged bad faith is continuing as Plaintiff admits, there will likely be non-overlapping discovery.

Finally, the Court in Wolf noted that simultaneous discovery would not be prudent if the case will involve "expert analyses of whether coverage and investigation decisions show bad faith given industry practice." 682 F. Supp. 2d at 201. Plaintiff states that he will need an expert "to establish that [Defendant's] investigation . . . was unreasonable" and "that [Defendant's] claims handling process was unreasonable and did not conform to the industry standard." Pl.'s Opp. 8-9. The expert discovery Plaintiff proposes, however, will have no relevance to the question of whether Defendant violated the insurance policy at issue. Again, this demonstrates that judicial resources will likely be spared with a stay of bad faith discovery.

In sum, the considerations outlined in Wolf lead the Court to conclude that this case will benefit from a stay of discovery on the bad faith claims. Accordingly, Defendant has met its burden

9

of showing that allowing bad faith discovery at this time would be an "inefficient use of both the parties' and this Court's resources," Bank of R.I., 293 F.R.D. at 106, as there appears to be little discovery overlap between the breach of contract and bad faith claims.

But the Court will allow, as it has done in previous cases, "witnesses [who] have knowledge relevant to both the breach of contract claims and the bad faith claims" to be questioned on "both sets of issues . . . during the first round of discovery." Glocester Country Club, 2020 WL 6945937, at *2. This will mitigate the necessity of having the parties organize and prepare for two depositions for one witness.

III.  Conclusion

For the reasons stated herein, Defendant's Motion to Bifurcate Plaintiff's Bad Faith Claims and to Stay Related Discovery, ECF No. 24, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
District Judge
Date: September 22, 2023