UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| | ) | |
| JAMES T. MULLOWNEY, JR. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-404-JJM-PAS |
| | ) | |
| USAA CASUALTY INSURANCE | ) | |
| COMPANY | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER

Before the Court is USAA Casualty Insurance Company's ("USAA") Motion for Partial Summary Judgment, ECF No. 39.  For the reasons stated below, the Court grants USAA's Motion for Partial Summary Judgment.

## I.    BACKGROUND

This dispute arises from James Mullowney's attempt to recover homeowner's insurance proceeds following a leak, which caused extensive water damage to his residence in Newport, Rhode Island.  ECF No. 40 at 1.  After Mr. Mullowney filed a claim, USAA assigned an independent adjuster who inspected the damage to the property and provided Mr. Mullowney with an initial payment of $80,636.74.  *Id.* at 2. Following the receipt of his first payment, Mr. Mullowney hired an individual to act as his public adjuster who subsequently prepared a damages estimate totaling $402,322.17.  *Id.*  In response, USAA hired a different adjuster who conducted an updated assessment of the property, which resulted in USAA providing Mr. Mullowney with an additional $97,100.  *Id.*

Although USAA supplied Mr. Mullowney with $322,718 within three months after he filed his claim, the parties could not reach a complete agreement on the compensation owed.[1]  *Id.* at 2-3.  As a result, Mr. Mullowney elected to initiate the appraisal process outlined by the insurance policy.  *Id.*  Specifically, the policy permits either party to demand an appraisal of the loss suffered that involves both parties selecting their own appraiser and the appraisers jointly selecting an umpire to resolve any valuation dispute that may arise between them.  *Id.* at 3.  Of relevance here, the policy specifies that a decision reached by the parties' appraisers "will set the amount of the loss" and that once the parties reach a determination on contractual liability, "the appraisal award is binding on you and us."  *Id.* at 3.

Following the parties' selection of their appraisal panel, the group conducted an extensive review and evaluation of the property, including an inspection with Mr. Mullowney.  *Id.* at 5.  The panel also relied on the expertise of several consultants, at least one of whom had the opportunity to view the premises.  *Id.*  Thereafter, the panel provided the parties with a unanimous appraisal award executed by all three of its members.  *Id.*  Following the panel's development of the award and application of the limitations contained in Mr. Mullowney's policy, USAA issued a supplemental payment of $734,787 to Mr. Mullowney.  *Id.* at 7-8.  Consistent with the policy, USAA also provided Mr. Mullowney with the opportunity to obtain additional withheld funds upon proof that he completed the requisite repairs to the property.  *Id.* at 8-9.

---

[1] Along with the two initial payments that Mr. Mullowney received, USAA also provided him with an additional $144,982 during this three-month period.  *See* ECF No. 39-3 ¶ 11.

2

While Mr. Mullowney initially provided some documentation indicating that he undertook efforts to repair the property, USAA deemed the information he provided insufficient and sought further proof of the work that he performed. *Id.* at 9-10. During this repair-documentation dispute, Mr. Mullowney sued USAA alleging that it failed to adequately investigate the loss or provide him with the requisite payment as mandated by the policy. *See* ECF No. 1 ¶¶ 12-13. Despite USAA's decision to grant Mr. Mullowney an extension to provide more detail regarding the work he performed, Mr. Mullowney failed to do so. *Id.* at 10-11. After this Court partially granted USAA's motion to dismiss Mr. Mullowney's negligence claim and denied their motion to confirm the panel's damages award as an arbitration award, USAA moved for partial summary judgment.[2]

## II.   STANDARD OF REVIEW

To succeed on a motion for summary judgment, litigants must demonstrate that a genuine issue of material fact does not exist and that they are entitled to judgment as a matter of law. *See Boykin v. Genzyme Therapeutic Prods., LP*, 93 F.4th 56, 60 (1st Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The summary judgment ritual is standard fare: once the movant adumbrates an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the genuine issue of material fact." *Id.* (citation modified). Critically, "to carry this burden, the nonmovant cannot simply rely on evidence that is conjectural or

---

[2] Also, under Rule 42(b) of the Federal Rules of Civil Procedure, the Court bifurcated Mr. Mullowney's bad faith claims pending its resolution of his contract claim. *See* ECF No. 27.

problematic but, rather, must present definite, competent evidence." *Id.* (citation modified). Finally, the interpretation of an insurance contract constitutes a question of law and courts must evaluate these policies by applying the same rules that govern the construction of contracts. *See Atmed Treatment Ctr., Inc. v. Travelers Indem. Co.*, 285 A.3d 352, 359-60 (R.I. 2022).

## III. DISCUSSION

The record does not present any genuine dispute of material fact concerning Mr. Mullowney's contract claim, and the law supports judgment for USAA. The record reveals that USAA complied with the assessment-dispute provisions contained in the policy and that Mr. Mullowney has presented no evidence or contractual language suggesting that USAA breached the policy's terms.

Mr. Mullowney appears to argue that the delay between the payment that he initially received, and the amount USAA awarded him breaches the contract in and of itself. ECF No. 42 at 3-6. His argument is that USAA undervalued the property based on a delay in payment alone. But Mr. Mullowney neither directs the Court to a contract term that would allow the Court to characterize USAA's supposed delay as a breach, nor does he provide the Court with binding authority that would permit the Court to characterize a delay in payment as authorizing a legitimate contractual action against USAA. *See id.* As a result of Mr. Mullowney's inability to demonstrate a genuine factual dispute about his contract claim, the Court determines that it must grant summary judgment in USAA's favor. *See Boykin*, 93 F.4th at 60 (determining

4

that a party opposing summary judgment must present "definite, competent" evidence in support of the Court's decision to deny this relief).

Moreover, the Court rejects Mr. Mullowney's attempt to argue that an incomplete or inadequate evaluation of the property's damages entitles him to relief here. *See* ECF No. 42 at 1-2 (arguing that USAA should have taken additional steps to evaluate whether hidden water damage existed). Mr. Mullowney had a knowledgeable representative act on his behalf during the final appraisal stage of this dispute, who then reached a unanimous decision with USAA's representative and their jointly appointed umpire. ECF No. 40 at 5. Even when viewed in the light most favorable to Mr. Mullowney, no factual dispute exists regarding whether the appraisal process occurred in a way that either violated the policy's terms or was otherwise unlawful. *Boykin*, 93 F.4th at 60. Although Mr. Mullowney now seeks to contest the methods undertaken to evaluate the damage that took place to the property, these retroactive arguments do not give rise to an actionable claim for a breach of contract and Mr. Mullowney fails to provide the Court with authority that would allow it to conclude otherwise. *See generally* ECF No. 40.

Still, Mr. Mullowney argues that USAA's treatment of his claim and the general unfairness that took place during its evaluation allows him to withstand summary judgment. *See id.* at 6-13. Mr. Mullowney contends that USAA's behavior runs afoul of the implied covenant of good faith and fair dealing as well as public policy considerations concerning the conduct of insurance companies and the speed at which they resolve claims writ large. *Id.* Despite this argument, Rhode Island law

requires litigants seeking to recover under a bad faith theory to first establish a breach of contract. *Wolf v. Geico Ins. Co.*, 682 F. Supp. 2d 197, 198 (D.R.I. 2010) ("It has long been held in this state that a bad faith action does not exist until the plaintiff first establishes a breach of contract.") (citing *Lamoureaux v. Merrimack Mut. Fire Ins. Co.*, 751 A.2d 1290, 1293 (R.I. 2000) and *Zarrella v. Minnesota Mut. Life Ins. Co.*, 824 A.2d 1249, 1261 (R.I. 2003)). Indeed, this longstanding principle of law served as the basis for the Court to bifurcate Mr. Mullowney's bad faith claims *in this case*. ECF No. 27 at 4. The Court therefore rejects Mr. Mullowney's attempt to evade this legal perquisite to the Court's evaluation of his bad-faith claim.

Consequently, the Court determines that summary judgment in USAA's favor is appropriate. Moreover, based on the Court's resolution of the instant motion, it also determines that Mr. Mullowney's bad faith claims are no longer viable as well.[3]

## IV.    CONCLUSION

There being no genuine issue of material fact, USAA has successfully demonstrated its entitlement to summary judgment. As a result, the Court GRANTS USAA's Motion for Partial Summary Judgment, ECF No. 39. Final judgment shall enter for the Defendant on all counts.

---

[3] As USAA mentioned in its memorandum, the Court has every expectation that USAA will remit the additional $7,500 payment to Mr. Mullowney based on the outstanding, undisputed amount owed for business personal property coverage.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

April 20, 2026